IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AYLA ERLER,

        Plaintiff,

  v.

YASHAR ERLER,

        Defendant.

_____/

No. CV-12-2793-CRB

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GIVING PARTIES NOTICE REGARDING POSSIBLE SUMMARY JUDGMENT FOR DEFENDANT**

In this action, Plaintiff Ayla Erler claims that her former husband, pro se defendant Yashar Erler, has breached his obligation under the Affidavit of Support he signed as part of her naturalization process. Upon consideration of the motion, the opposition thereto, supplemental briefing, and the arguments of the parties at two hearings, the Court denies Plaintiff's motion for summary judgment and grants summary judgment in favor of Defendant.

## I. BACKGROUND

Before Ayla and Yashar Erler married on April 15, 2009, Pl.'s Decl. (dkt. 7) ¶ 4, each party signed a premarital agreement, which stated that "neither party shall seek or obtain any form of alimony or support from the other." Opp'n Exh. C (dkt. 12), Appeal on Validity of Premarital Agreement at 2. Two weeks later, Defendant signed United States Citizenship and Immigration Services Form I-864, entitled "Affidavit of Support." See generally Compl.

Exh. A (dkt. 1), Aff. of Support.  By signing this Affidavit, Defendant promised to provide any support necessary to maintain Plaintiff at an income of no less than 125% of the Federal Poverty Guidelines.  Id. at 8.

Plaintiff and Defendant separated on March 25, 2011, and divorced on March 22, 2012.  Compl. ¶ 12; Pl.'s Decl. ¶ 6; Mot. Exh. C (dkt. 7), Judgment for Dissolution of Marriage ¶ 4.  The divorce judgment requires that each party retain all assets and debts under their separate names, and that Plaintiff reimburse Defendant for incidental costs he covered since their separation.  Id., Attachment to Judgment ¶¶ I:1-5.  The judgment further provides that "[t]here shall be no spousal support due or owing either party to the other."  Id. ¶ II:1.  Plaintiff has not worked since the separation.  Pl.'s Decl. ¶ 13.  From May 2011 until October 2012, she received $200 per month in food stamps.  Id.  In addition, she receives a pension from the Turkish government, which is deposited into a Turkish bank account and is only accessible from Turkey.  Id. ¶ 17.  Defendant has not provided Plaintiff with any other financial assistance other than $3,500 to assist with her moving expenses in April 2011.  Plaintiff has been living with her adult son, Dogukan, who uses his income of approximately $3,200 per month to pay rent and incidental expenses.  Opp'n Exh. A, Pl.'s Income & Expense Decl. ¶ 12.

In May 2012, Plaintiff filed this action, asserting that Defendant has failed to meet his contractual obligation under the Affidavit to maintain her income at no less than 125% of the Federal Poverty Guidelines.  Compl. ¶¶ 18, 21.  She seeks declaratory relief and damages in the amount of $20,978.28, plus legal fees.  Compl. at 4-5.  In response to Plaintiff's motion for summary judgment, Defendant asserts that the Affidavit is void, and to the extent it is still valid, he has satisfied his obligations.

## II.     LEGAL STANDARD

### A.     Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is a sufficient evidentiary basis on

United States District Court
For the Northern District of California

1    which a reasonable fact finder could find for the nonmoving party, and a dispute is

2    "material" only if it could affect the outcome of the suit under governing law.  See <u>Anderson</u>

3    <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  A principal purpose of the summary

4    judgment procedure "is to isolate and dispose of factually unsupported claims."  <u>Celotex</u>

5    <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  "Where the record taken as a whole could not

6    lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

7    trial.'"  <u>Matsushita Elec. Ind. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).

8           **B.      United States Citizenship and Immigration Services Form I-864, Affidavit
                of Support**

9

10          Under 8 U.S.C. § 1183, immigrants who are deemed likely to become public charges

11   may gain admission to the United States if a sponsor signs United States Citizenship and

12   Immigration Services Form I-864, Affidavit of Support, thereby promising to maintain the

13   sponsored immigrant at no less than 125% of the Federal Poverty Guidelines for the

14   immigrant's household size.  See 8 U.S.C. § 1183a(a)(1)(B); Aff. at 6; <u>Shumye v. Felleke</u>,

15   555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008).  "The requirement under § 1183a that a

16   sponsor promise to maintain the immigrant is intended not only to protect the immigrant

17   from poverty, but to protect the government from a public burden."  <u>Carlborg v. Tompkins</u>,

18   10-CV-187-BBC, 2010 WL 4553558, at *4 (W.D. Wis. Nov. 3, 2010).

19          As the form explains, the Affidavit "create[s] a contract between [the sponsor] and the

20   U.S. Government," which can be enforced by the sponsored immigrant.  Aff. at 6-7.  The

21   sponsor's obligation ends only in the event the sponsored immigrant (1) becomes a U.S.

22   citizen, (2) works 40 quarters as defined by the Social Security Act, (3) no longer has lawful

23   permanent resident status and permanently leaves the United States, (4) receives a new grant

24   of adjustment of status based on a new Affidavit of Support, or (5) dies.  Aff. at 13.  The

25   form specifically states: "Note that divorce <u>does not</u> terminate your obligations under this

26   Form I-864."  <u>Id.</u>

27

28
                                                3

United States District Court
For the Northern District of California

1   **III.    DISCUSSION**

2       **A.    Defendant Has A Continuing Obligation Under The Affidavit Of Support**

3           Defendant does not deny that he signed the Affidavit, nor contend that any of the

4   aforementioned events that terminate a sponsor's obligation have occurred.  Instead, he takes

5   the position that the Affidavit is void as a result of the parties' premarital agreement, the

6   divorce judgment, and Plaintiff's fraudulent misrepresentations.  In the alternative,

7   Defendant contends that his failure to attend a Homeland Security Interview on Plaintiff's

8   behalf, as required by Public Law 99-639, terminated Plaintiff's conditional resident status

9   and, in turn, his obligations under the Affidavit.

10              **1.    The Pre-Marital Agreement Did Not Void the Affidavit**

11          The Court concludes that the Affidavit is valid and enforceable despite the parties'

12  earlier premarital agreement.  As it plainly states, the Affidavit constitutes a contract between

13  Defendant and the United States Government.  Aff. at 6; Carlborg, 2010 WL 4553558, at *3.

14  Defendant could not unilaterally absolve himself of his contractual obligation with the

15  Government by contracting with a third party, Plaintiff, in the premarital agreement.  If that

16  were possible, parties could routinely rely on premarital agreements to undermine the

17  Affidavit's goal of preventing immigrants from becoming public burdens.  Carlborg, 2010

18  WL 4553558, at *4.[1]

19

20

21          [1] Moreover, Defendant entered into the premarital agreement before signing the Affidavit. Even

22  if Plaintiff were considered a party to the contract created by the Affidavit rather than a third-party
    beneficiary, the Affidavit would have superceded the terms of the premarital agreement, not the other

23  way around.  See Crossen v. Foremost-McKesson, Inc., 537 F. Supp. 1076, 1077 (N.D. Cal. 1982) ("[A]
    subsequent written contract serves to alter a prior written contract.").  This distinction also demonstrates

24  why Defendant's reliance on  Blain v. Herrell, No. 10-00072ACK-KSC, 2010 WL 2900432 (D. Hawaii
    July 21, 2010), is misplaced.  In Blain, a month after the sponsor signed the Affidavit of Support, the

25  parties signed a premarital agreement waiving the immigrant's "right to seek support in any form." Id.
    at *1.  The court found that the immigrant waived his right to enforce the I-864 by subsequently signing

26  the premarital agreement.  Id. at *8.  Unlike the immigrant in Blain, however, Defendant signed the
    premarital agreement before he signed the Affidavit.  Defendant therefore undertook the Affidavit's

27  obligations after he purportedly disclaimed them in the premarital agreement. Put another way, Plaintiff
    could not have waived rights in the premarital agreement that she had not yet acquired—and Defendant

28  had not granted her—by the Affidavit.

1    In the alternative, Defendant argues that the premarital agreement indicates that,

2    despite signing the Affidavit, he never intended to continue providing for Plaintiff in the

3    event of divorce.  This explanation is also unavailing.  A contract's validity hinges not on the

4    parties' subjective intentions, but rather their objective manifestations of intent.  See

5    Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 873 (9th Cir. 1979) ("Under the

6    modern theory of contracts we look to objective, not subjective, criteria in ascertaining the

7    intent of the parties.").  Regardless of Defendant's intentions, by signing the Affidavit under

8    penalty of perjury, Defendant objectively indicated his assent to its terms: "I agree, freely

9    and without any mental reservation or purpose of evasion, to accept each of those obligations

10    in order to make it possible for [Plaintiff] to become [a] permanent resident[] of the United

11    States."  Aff. at 7.

12              **2.       The Divorce Judgment Did Not Void The Affidavit**

13    The Court also rejects Defendant's assertion that the divorce judgment relieved him of

14    his obligations under the Affidavit by providing that "[t]here shall be no spousal support due

15    or owing either party to the other."  Opp'n Exh. B, Attachment to Judgment for Dissolution

16    of Marriage, ¶ II.1.  The Affidavit's obligations "exist[] apart from whatever rights [plaintiff]

17    might or might not have under [state] divorce law."  Liu, 686 F.3d at 419-20 (7th Cir. 2012).

18    Because Defendant's obligation under the Affidavit is to the Government, Plaintiff's right to

19    support under the Affidavit persists regardless of the terms of the divorce judgment.

20    Defendant again invokes the divorce judgment's provision that "[t]here shall be no

21    spousal support due or owing either party to the other," to argue that it relieved him of his

22    obligation under the Affidavit.  Reply at 3 (citing Attachment to Judgment for Dissolution of

23    Marriage, ¶ II.1).  He also cites the divorce court's statement that the Affidavit "even says it

24    is a document creating a contract between him and the United States Government.  It is not

25    going to go to the validity of the [marital agreement]."  Appeal Re: Validity of Prenuptial

26    Agreement, Exh. C (dkt. 12) at 16 n.5.  The court's language was directed at Plaintiff's

27    argument that the Affidavit contradicted the premarital agreement and therefore superceded

28    it.  Id.  Sustaining a relevance objection to Plaintiff's counsel questioning Defendant about

the Affidavit, the court ruled that the Affidavit had no bearing on the validity of the Premarital Agreement.  Defendant's reliance on this language is misplaced because the divorce court was not called upon to address the converse argument he makes now: whether the premarital agreement affected the validity of the Affidavit.  Id.

> **3.    Defendant Has Not Demonstrated The Affidavit is Invalid Due To Fraud**

Finally, Defendant argues that, unbeknownst to him at the time, Plaintiff entered into the marriage for the sole purpose of obtaining citizenship and that he signed the Affidavit as a result of this fraudulent misrepresentation.  Even if such a defense were viable, Defendant does not provide sufficient evidence to demonstrate that he signed the Affidavit on the basis of fraud.  See, e.g., Carlborg, 2010 WL 4553558, at *3 (informally translated emails from the immigrant, in which she discussed her plan to marry for a Green Card, were insufficient evidence of fraud); Cheshire v. Cheshire, No. 3:05-CV-00453-TJC-MC, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006) (short duration of marriage alone was insufficient to demonstrate Affidavit was induced by fraud).  Defendant's complaint of fraud to the Department of Homeland Security, without any subsequent findings in his favor, does not meet his burden of proof, nor does the brief duration of the marriage.[2]

Moreover, the time for Defendant to contest the marriage's validity has passed.  Any allegations of fraud should have been made to the state court during divorce proceedings. See Carlborg, 2010 WL 4553558, at *3 ("[T]he place for defendant to challenge the legitimacy of the marriage itself was before the state court in the divorce proceedings.  He may not relitigate the validity of the parties' marriage here.").

---

[2]  The parties also dispute whether Plaintiff came to the United States to marry Defendant or whether she met Defendant and began considering marriage once she had already arrived.  This is not a material fact. Regardless of Plaintiff's intentions, Defendant took on a contractual obligation to the United States provide for her financial support by signing the Affidavit in furtherance of her nationalization process.

United States District Court
For the Northern District of California

### 4.   Defendant's Failure to Attend Plaintiff's Homeland Security Interview Does Not Relieve His Obligations Under the Affidavit

Defendant further argues that his failure to meet with the Department of Homeland Security at the two-year wedding anniversary absolves him from the Affidavit's requirements.  The Court construes this argument to be based on Public Law 99-639, which requires the immigrant and citizen spouses to attend an interview with Homeland Security "during the 90-day period before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence."  Pub. L. No. 99-639, 100 Stat. 3537 (1986).  Failure to submit this petition or attend the interview may result in termination of the immigrant's permanent status.  Id.

Defendant apparently takes the position that he is relieved from his obligation under the Affidavit because Plaintiff's resident status is in jeopardy.  These circumstances do not, however, satisfy the relevant provision of the Affidavit, under which the sponsor's obligation is terminated when Plaintiff "[n]o longer has lawful permanent resident status, and has departed the United States."  Aff. at 7 (emphasis added).  While his failure to attend the immigration interview might ultimately affect Plaintiff's residency status, Defendant offers no evidence that her status has been revoked at this time, nor does he dispute that she still lives in the United States.

In sum, Defendant's will continue to be bound by the Affidavit unless and until any of the terminating conditions listed in the Affidavit occur.  See Aff. at 6-7.

### B.   Defendant Has Not Breached His Obligations Under The Affidavit

Having found that the Affidavit continues to bind Defendant, the Court next considers whether he has breached that obligation by failing to maintain Plaintiff's income at 125% of the Federal Poverty Guidelines since their separation.  She claims that her only source of income from 2011 to the present was $3,500 that Defendant paid her to move out during their separation period—an amount insufficient to place her above the Affidavit's threshold.  In response, Defendant states that he paid for incidental expenses while they were separated as well as her attorneys' fees pursuant to the divorce judgment, and that Plaintiff also received food stamps, a stipend from the Turkish government, and her son's income.

United States District Court
For the Northern District of California

1    To address this issue, the Court must first determine the income required to maintain

2    Plaintiff at 125% of the Federal Poverty Guidelines, which, in turn, depends on the size of

3    Plaintiff's household.  Defendant argues that Plaintiff and her adult son, Dogukan, constitute

4    a two-person household, which increases the income required by the Federal Poverty

5    Guidelines but also takes into account Dogukan's income.  Plaintiff urges the Court to

6    exclude Dogukan from her household because she receives food stamps as a one-person

7    household, and a finding that she and Dogukan are a two-person household would be

8    contrary to congressional intent and public policy.  See generally Pl.'s Supp. Brief (dkt. 20).

9    Defendant has the better argument.

**1.    There Is No Standard Definition Of Household Size**

11    Plaintiff correctly states that the Government's definition of household size varies

12    depending on the context in which it is to be applied.  Supp. Brief at 2 ("There is no

13    universal federal law of how the 'U.S. government calculates household size.'").  The

14    Department of Health and Human Services, which establishes the Federal Poverty

15    Guidelines, does not define or "family" or "household," but instead defers to the various

16    federal programs that apply the Guidelines, so that the program in question can define

17    "household" in a way that best serves its needs.  See Annual Update of the HHS Poverty

18    Guidelines, 78 Fed. Reg. 5182-01 (Jan. 24, 2013) ("[Q]uestions about how a specific

19    program applies the guidelines should be directed to the entity that administers or funds the

20    program, since that entity has the responsibility for defining such terms as 'income' or

21    'family.'").

22    Here, however, the Department of Homeland Security, Citizen and Immigration

23    Services does not provide an applicable definition of household, as neither the language of 8

24    C.F.R. § 213a.1 nor its legislative history offer guidance as to how the Court should

25    calculate post-divorce household size.  Section 213a.1 does define "household size," but for

26    the express purpose of determining whether the intending sponsor's income is sufficient to

27    support the intending immigrant.  The intending sponsor's "household" includes the

28    sponsor, his spouse, and the sponsor's unmarried children under 21.  The sponsor may also

"include in the calculation of household size any relative of the sponsor who has the same principal residence as the sponsor." Affidavits of Support on Behalf of Immigrants, 71 Fed. Reg. 35736-01.  Although this definition could arguably transfer to other contexts, it does not inform the Court's analysis here.  The only way to apply this definition to the issue before the court—determining Plaintiff's post-divorce household size—would be to apply the definition as if Plaintiff were applying to sponsor an immigrant.  Among other problems, this method does not answer the question of whether Dogukan should be considered part of her household because including Dogukan in the household would be permissible but not mandatory.

Because Congress opted to define the term in one context (sponsor's pre-sponsorship household) and not another (immigrant's post-divorce household), the Court concludes that Congress intentionally declined to define post-divorce household size to allow a more flexible definition under these circumstances.  Id.; see Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

### 2.   Plaintiff's Arguments In Support of A One-Person Household Are Flawed

Plaintiff raises several points to support her argument that the Court should consider her to be a one-person household, but none are persuasive.  First, Plaintiff asserts that the "Government has already determined [Plaintiff] is a household of one under the food stamps regulation."  Supp. Brief at 5.  This statement is flawed in several respects.  The "Government" to which she refers is the California Department of Social Services, not the federal government via the Department of Homeland Security.  Not only does Plaintiff's reliance on the food stamp definition contradict her statement that a "household" is context-specific, a household for the purpose of food stamps is driven by very different considerations, as it is directly related to food consumption.  Specifically, a household consists of people living under the same roof unless "an individual living with others . . .

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

customarily purchas[es] food and preparing meals for home consumption separate and apart from others."  DSS Food Stamp Manual of Policies and Procedures, 63-402.1– 402.142(a)(1).  Because the Affidavit is intended to cover not only sustenance but broader concerns that might cause an immigrant to become a public charge, the Court finds the fact that she is a one-person household for food stamps inapposite.[3]

Next, Plaintiff urges the Court to consider that Defendant—not her son—is obligated to maintain her income under the Affidavit.  Dogukan should not be included in her household because "Congress intended to put the financial obligation of support only on those person(s) who contractually agree to act as sponsor(s)."  Supp. Brief at 5.  The Court rejects this notion because it leads to an untenable result: the sponsor would be the only means of support for the immigrant, no matter her living arrangements.  For example, an immigrant who becomes part of a millionaire's family would nevertheless qualify as a one-person household because no one in the millionaire's family is her sponsor.  It is nonsensical to disregard the millionaire's support to the hypothetical immigrant while her sponsor remains obligated to maintain her at 125% of the Federal Poverty Guidelines.  The issue at hand is whether Dogukon's support—regardless of his reasons for providing that support—renders the living arrangement a two-person household.[4]

Finally, Plaintiff asserts that "allowing a sponsor to escape a legal obligation based on the charity of others contravenes the fundamental objective of the Affidavit of Support" because it would discourage family members from providing assistance.  Supp. Brief at 8 ("Dogukan's willingness to provide his mother with temporary housing is a good thing, and

---

[3]  Moreover, her status as a one-person household for the purposes of food-stamps is based only on her self-designation. Defendant claims that Plaintiff's food stamp application fraudulently misrepresents her current living situation. Because Plaintiff's household classification for the purposes of applying for food stamps is irrelevant to the present analysis, the Court need not address whether Plaintiff is appropriately considered a one-person household for the purposes of receiving food stamps.

[4]  Plaintiff also notes that Defendant would not be required to support both Plaintiff and Dogukan if Dogukan's income were to fall below 125% of the poverty line.  Plaintiff's argument ignores the fact that family members living together typically share income and expenses, as the Poverty Guidelines recognize by aggregating income and theoretical expenses on a household—rather than individual—level.  The fact that Defendant is not obligated to support Dogukan has no bearing on whether Plaintiff and Dogukan are a combined household.

United States District Court

For the Northern District of California

1  should not be punished by turning it into a perpetual requirement.").  The Court rejects this

2  argument because it does not acknowledge Government's countervailing concerns.

3  Allowing an immigrant to receive windfall benefits such that the sponsor could be forced to

4  rely on public benefits would plainly contravene the purpose of the Affidavit.  See Stump,

5  2005 WL 2757329, at *5-6 (holding it would be counterproductive to the goals of the

6  Affidavit to "deplet[e] the sponsor's income. . . leaving other family members living below

7  the poverty level and likely to become public charges.").

8                  **3.       Plaintiff And Her Son Are A Two-Person Household**

9          Having found that there is no established method for determining household size in

10 this context, the Court looks to the concerns the Affidavit seeks to address.  When

11 determining post-divorce household size, courts have considered whether an immigrant

12 living alone should receive: (a) support payments based on the marital household size, (b) a

13 pro rata share of the Guidelines for the marital household size, or (c) payments

14 corresponding with a one-person household.  Of these options, courts have universally held

15 that where the divorced immigrant lives alone, or only temporarily with others, she should

16 receive payments based on a one-person household, since paying her for the full marital

17 household size would result in unjust enrichment, while on the other hand, a pro rata share

18 would be insufficient to prevent her from becoming a public charge.  See, e.g., Stump v.

19 Stump, 1:04-CV-253-TS, 2005 WL 2757329, at *5-6 (N.D. Ind. Oct. 25, 2005) (declining to

20 find Plaintiff  entitled to 125% of the poverty level for the original household size because

21 "[n]ot only would the Plaintiff be placed in a better position than had the breach not

22 occurred, but such an interpretation would have a higher potential of depleting the sponsor's

23 income through support obligations to the sponsored alien alone, leaving other family

24 members living below the poverty level and likely to become public charges");

25 Skorychenko v. Tompkins, No. 08-CV-626-BBC-2009, 2009 WL 3837340, at *1 (W.D.

26 Wis. Nov. 16, 2009) (basing household size calculation on plaintiff's post-divorce living

27 arrangements because pro rata share of marital household would be insufficient to keep

28 plaintiff from becoming a public charge).

United States District Court
For the Northern District of California

1    Plaintiff's situation—an immigrant living with an adult child—is distinguishable

2    from an immigrant living with a dependent child or temporarily living with friends.  See,

3    e.g., Stump v. Stump, 2005 WL 2757329, at *5 (applying a household size of one where

4    "the Plaintiff lived either with friends from church or in shelters"); Harsing v. Naseem, Civil

5    No. 11-1240CCC, 2012 WL 140418, at *2 (D.P.R. Jan. 18, 2012) (applying a household

6    size of one where the plaintiff "lived with friends in Carolina, Puerto Rico since the

7    separation"); Hrachova v. Cook, No. 5:09-cv-95-Oc-GRJ, 2009 WL 3674851, *4 n.13

8    (M.D. Fla. Nov. 3, 2009) (applying a household size of two where plaintiff lived with her

9    dependant daughter).  Nevertheless, the reasoning of these cases is instructive: courts must

10   strike a balance between ensuring that the immigrant's income is sufficient to prevent her

11   from becoming a public charge while preventing unjust enrichment to the immigrant.  See,

12   e.g., Stump, 2005 WL 2757329, at *5-6.

13   With this balance in mind, the Court determines that Plaintiff lives in a two-person

14   household for purposes of the Affidavit.  This conclusion is consistent with the Affidavit,

15   which does not obligate the sponsor to pay the immigrant 125% of the Federal Poverty

16   Guidelines but only to act as a safety net to ensure that, in any given living situation, her

17   overall income does not fall below that level.  As long as the two-person household unit

18   receives an income sufficient to place them at 125% of the Federal Poverty Guidelines for a

19   family of two, Plaintiff does not need either her sponsor or the Government to provide for

20   her basic needs.[5]

21   There is no dispute that Plaintiff has lived with Dogukan for years and that he has

22   provided for her basic needs in addition to a home and car.  Just as the court in Stump found

23   that calculating payments owed to an immigrant living alone based on the full marital

24   household size would result in unjust enrichment, so too would requiring Defendant to

25   _____

26   [5]  Although Plaintiff is currently receiving food stamps, as discussed above, the food stamp
     program defines household size in a way that is not applicable in the context of the Affidavit.  Further,

27   the government entity issuing the food stamps can sue Defendant for reimbursement, pursuant to the
     terms of the Affidavit.  See Aff. at 6 ("If a [government] agency provides any covered means-tested

28   public benefit to the [immigrant], the agency may ask you to reimburse them for the amount of the
     benefits they provided.  If you do not make the reimbursement, the agency may sue you for the amount
     that the agency believes you owe.").

provide Plaintiff an income sufficient to live as a one-person household regardless of Dogukan's income. See Stump, 2005 WL 2757329, at *5-6. Accordingly, the Court measures Plaintiff and her son's combined income against 125% of the Federal Poverty Guidelines for a two-person household when determining whether Defendant has met his obligations under the Affidavit.

### 4. The Income Of Plaintiff's Two-Person Household Exceeds The Affidavit's Threshold

Dogukan's income is approximately $3,200 a month. Hr'g Tr. at 3-4; see also Pl.'s Income & Expense Decl. ¶ 12. Based on the 2011 Federal Poverty Guidelines,[6] the Affidavit required Defendant to maintain Plaintiff's income above $14,206 for the period beginning on March 25, 2011 and ending on December 31, 2011.[7] Dogukan's income alone for that period was $28,800—more than twice the amount required by the Affidavit. Similarly, 125% of the 2012 Federal Poverty Guideline for a two-person household is $18,912.50, while Dogukan's income in 2012 was $38,400.[8]  In light of this undisputed evidence, the Court concludes that Defendant has not breached his obligation to maintain Plaintiff at an income of no less than 125% of the Federal Poverty Guidelines because the income of her two-person household has exceeded this level since March 25, 2011.[9]

In sum, Plaintiff is not entitled to summary judgment because Defendant has not breached his obligations pursuant to the Affidavit.

---

[6]  Annual Update of the HHS Poverty Guidelines, 76 Fed. Reg. 3637-38 (Jan. 20, 2011).

[7]  The Court prorates 125% of the annual guideline amount for the period beginning on March 25, 2011, the date the parties separated. Compl. ¶ 12.

[8]  Since adherence to the Affidavit's obligations is evaluated on a yearly basis, it is not yet time to analyze numbers for 2013. Shumye, 555 F. Supp. 2d at 1024-25 (holding that the defendant's performance under the Affidavit must be evaluated on a yearly, not aggregate basis).

[9]  Plaintiff's counsel stated that this figure represents Dogukan's monthly income  "according to the most recent data," Hr'g Tr. at 3-4, but did not proffer any contrary evidence regarding Dogukan's income.  Indeed, Plaintiff's counsel conceded that if the Court were to include Dogukan's income, the household's income would exceed the Affidavit's threshold.  6/21/2013 Hr.'g Tr. 3-5.

United States District Court
For the Northern District of California

1

**C.**     **Declaratory Relief Is Not Appropriate**

2        The Court declines to grant Plaintiff the declaratory relief she seeks: a declaration

3  that Defendant "is required to support [Plaintiff] at 125 of the Federal Poverty Guidelines

4  pursuant to the Affidavit of Support."  Compl. ¶ 23.  "Declaratory relief should be denied

5  when it will neither serve a useful purpose in clarifying and settling the legal relations in

6  issue nor terminate the proceedings and afford relief from the uncertainty and controversy

7  faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir.1985).

8        In order to determine whether Defendant breached his obligations under the

9  Affidavit, the Court had to first address whether Defendant remains bound by the Affidavit.

10 By deciding that threshold issue, see Section A supra, the Court already ruled on the very

11 question posed by Plaintiff's claim for declaratory judgment.  As such, the declaratory

12 judgment claim is needlessly duplicative of  Plaintiff's claim for breach.  Because the

13 declaration Plaintiff seeks would grant Plaintiff no additional or different relief from its

14 ruling on the breach claim, nor impose any additional or different obligations on Defendant,

15 the Court finds that Plaintiff is not entitled to declaratory judgment.  See Custom LED, LLC

16 v. eBay, Inc., C 12-00350 SI, 2012 WL 1909333 (N.D. Cal. May 24, 2012) (declaratory

17 relief claim "superfluous" where the Court's ruling resolved the parties' rights under the

18 contract. "The claim for declaratory relief will not accomplish anything in addition to the

19 resolution of plaintiff's breach of contract claim and, therefore, it is not appropriate.")

20 (quoting United States v. Washington, 759 F.2d at 1357); Tech. & Intellectual Prop.

21 Strategies Grp. PC v. Fthenakis, C 11-2373 MEJ, 2011 WL 3501690, at *10 (N.D. Cal.

22 Aug. 10, 2011) (declaratory relief counterclaim "needlessly duplicative" where it was

23 "wholly dependent on the Court's findings on the substantive claims, would not provide

24 defendant "any damages or relief beyond the relief requested pursuant to his substantive

25 claims," nor "resolve any issues aside from those already addressed by the substantive

26 claims.").

27

28

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

**D.      The Parties Are On Notice That the Court May Grant Summary Judgment For Defendant**

Having found no genuine dispute of material fact and ruled that Plaintiff is not entitled to summary judgment on either of her claims, the Court is inclined to grant summary judgment for Defendant.  Because Defendant did not file a cross-motion, the Court hereby notifies the parties that it is considering entering summary judgment against Plaintiff and in favor of Defendant.  <u>See</u> Federal Rule of Civil Procedure 56(f)(1) ("After giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant.").  The parties have until **December 9, 2013**, to file any response to the Court's stated intent.  If no responses are filed, the Court will enter an order of judgment for Defendant.

## IV.      CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and NOTIFIES the parties that the Court intends to grant summary judgment in favor of Defendant.

**IT IS SO ORDERED.**


Dated:    November 21, 2013                  _____
                                                              CHARLES  R. BREYER
                                                              UNITED STATES DISTRICT JUDGE

15