IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLA ERLER,<br><br>   Plaintiff,<br><br> v.<br><br>YASHAR ERLER,<br><br>   Defendant. | Case No. 12-cv-02793-CRB<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REFERRING CASE TO MAGISTRATE JUDGE** |

  Plaintiff Ayla Erler brought suit against her ex-husband, Defendant Yashar Erler, for failing to maintain his obligation to support Ayla at 125% of the Federal Poverty Guidelines under the I-864 form, Affidavit of Support. In 2013, the Court filed an order "denying plaintiff's motion for summary judgment and giving parties notice regarding possible summary judgment for defendant." Erler v. Erler, No. CV-12-2793-CRB, 2013 WL 6139721, at *1 (N.D. Cal. Nov. 21, 2013). The Court found that though Yashar's[1] obligation continued irrespective of their divorce proceedings, Ayla, who lived with her adult son, earned above 125% of the Federal Poverty Guidelines. In 2016, the Ninth Circuit vacated the Court's grant of summary judgment to Yashar. The Ninth Circuit remanded the case with instructions to determine Yashar's obligation to Ayla based on a one-person household, disregarding Ayla's adult son's income.

  As explained below, the Court DENIES Yashar's motion for summary judgment and GRANTS IN PART and DENIES IN PART Ayla's motion for summary judgment.

---

[1] For purposes of clarity and in keeping with the Ninth Circuit's treatment of the parties in its order, the Court uses the parties' first names.

The Court holds that Ayla's food stamps from California and her pension from the Turkish Government are income, which reduces the sum that Yashar owes to Ayla. The Court ORDERS the parties to return to Magistrate Judge Cousins to determine the exact monetary damages consistent with this Order.

## I. BACKGROUND

### A. Facts

Ayla emigrated from Turkey in November 2008 to marry Yashar, an American citizen. Erler v. Erler, 824 F.3d 1173, 1175 (9th Cir. 2016). The parties signed a premarital agreement, which stated that "neither party shall seek or obtain any form of alimony or support from the other." Id. Ayla and Yashar married on April 15, 2009. Id. On April 29, 2009, as a part of Ayla's naturalization process, Yashar signed the I-864 form, Affidavit of Support ("Affidavit"). Id. The Affidavit included a commitment to support Ayla at 125% of the Federal Poverty Guidelines. Id.

On March 25, 2011, Ayla and Yashar separated. Id. After the separation, in April 2011, Ayla moved in with her adult son, Dogukan Solmaz, a California resident. Id. Yashar paid $3,500 to Ayla to assist with moving expenses. Id. at 1176. Yashar and Ayla appeared in the Family Law Division of Superior Court of California, County of San Mateo on March 22, 2012, and finalized their divorce on May 4, 2012. Yashar Decl. Ex. D (dkt. 70-5). The court ordered Ayla to reimburse Yashar $10,242.00 for possession of his property. Id. Yashar claims in his motion that he has yet to collect this payment but does not provide support for his claim. See Yashar Mot. (dkt. 70) at 3. Ayla has not worked since the separation. Ayla 2017 Decl. (dkt. 71-1) ¶ 2.

From May 2011 to October 2012, Ayla received approximately $200 per month in food stamps from the State of California. Id. ¶ 6. In February 2013, the State of California resumed dispersing food stamps to Ayla. Id.

Ayla also has a pension from the Turkish government for her prior service in its telecommunications department. Id. ¶ 4. Ayla claims that she can only access the funds in Turkey and must use a Turkish debit card to do so. Id. She does not receive any of the

2

pension funds for use in the United States. Id. In her prior declaration, in 2013, Ayla conceded that her adult "daughter in Turkey accesses the pension funds and uses them to pay for her own living expenses in Turkey." Ayla 2013 Decl. (dkt. 7) ¶ 17. Ayla's account records show consistent money withdrawals from 2011 to 2016. See Yashar Decl. Ex. I (dkt. 70-10).

### B. Procedural History

On May 31, 2012, Ayla filed this action, asserting that Yashar has failed to meet his obligation to maintain Ayla at 125% of the Federal Poverty Guidelines since their separation in March 2011. Erler, 824 F.3d at 1176. Filing for summary judgment, Ayla sought declaratory relief, monetary damages, and legal fees. Id. In response, Yashar filed an opposition and cross-motion for summary judgment, contending that the divorce ended his obligation. Yashar 2013 Mot. (dkt. 12); Erler, 824 F.3d at 1176. He also argued that even if the Affidavit remained valid after their divorce, Ayla had earned at least 125% of the Federal Poverty Guidelines. Id.

On November 21, 2013, the Court "den[ied] plaintiff's motion for summary judgment and [gave] parties notice regarding possible summary judgment for defendant." Erler, 2013 WL 6139721, at *1. The Court held that Yashar's obligation extends after the divorce and continues until one of the five circumstances outlined in the Affidavit occurs. Erler, 824 F.3d at 1176. The Court also held that even though Yashar has a continuing obligation, he did not breach the Affidavit, because the financial support Ayla received from her son kept her above 125% of the Federal Poverty Guidelines. Id. Ayla appealed to the Ninth Circuit. Id.

On June 8, 2016, the Ninth Circuit affirmed the Court's holding that Yashar's obligation continued after the divorce, but vacated the Court's grant of summary judgment for Yashar. Id. at 1180. The Ninth Circuit held that Ayla's adult son's income is irrelevant when calculating Yashar's financial obligation. Id. at 1179–80. The Ninth Circuit remanded the case with instructions to determine Yashar's annual financial obligation to Ayla based on a one-person household. Id. at 1180. Because the Ninth

3

1  Circuit did not offer any guidance as to what qualifies as "income" under 8 U.S.C. §
2  1183a, the Court must now determine, largely as a matter of first impression, which
3  sources of financial support, if any, qualify as income that would mitigate or discharge
4  Yashar's liability. See id. ("Rather than address these questions for the first time on
5  appeal, we leave them for the district court to address on remand.").

Upon remand, both parties attended a settlement conference with Magistrate Judge Nathanael Cousins. Settlement Conference (dkt. 67). After the parties could not settle, they filed cross-motions for summary judgment and opposition briefs. Yashar Mot.; Ayla Mot. (dkt. 71); Yashar Opp'n (dkt. 72); Ayla Opp'n (dkt. 73). Ayla claims that she does not have any income as defined by 8 U.S.C. § 1183a, and thus, Yashar owes her 125% of the Federal Poverty Guildelines minus his one-time payment of $3,500 for her moving expenses. Ayla 2017 Decl. ¶ 2; see Ayla Mot. at 4–5. She seeks declaratory relief and damages in the amount of $79,493.60, plus attorneys' fees. Id. Yashar argues that even without her son's financial support, Ayla has earned above 125% of the Federal Poverty Guidelines for a one-person household. Yashar Mot. at 2–3. In his opposition, Yashar additionally claims that Ayla has not complied with his discovery requests. See Yashar Opp'n at 2–9.

The Court must decide whether Ayla earned any money that qualified as income according to 8 U.S.C. § 1183a. See Erler, 824 F.3d at 1179–80. If Ayla earned income, then the Court must determine how much that income reduces Yashar's financial obligation to Ayla from March 2011 through the end of 2016.

## II. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A principal purpose of the summary

4

judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "Where the records taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Under 8 U.S.C. § 1183a, immigrants who are deemed likely to become public charges may gain admission to the United States if a sponsor signs United States Citizenship Immigration Services Form I-864 (the Affidavit), thereby promising to maintain the sponsored immigrant at no less than 125% of the Federal Poverty Guidelines for the immigrant's household size. See 8 U.S.C. § 1183a(a)(1)(A); Aff. (dkt. 70-3) at 6. "The requirement under § 1183 a [sic] that a sponsor promise to maintain the immigrant is intended not only to protect the immigrant from poverty, but to protect the government from a public burden." Carlborg v. Tompkins, 10-CV-187-BBC, 2010 WL 4553558, at *4 (W.D. Wis. Nov. 3, 2010).

The Affidavit "create[s] a contract between [the sponsor] and the U.S. Government," which can be enforced by the sponsored immigrant. Aff. at 6. The sponsor's obligation ends only in the event that the immigrant does one of the following:

(1) becomes a citizen of the United States;

(2) has worked or can be credited with 40 qualifying quarters of work under title II of the Social Security Act;

(3) ceases to be a lawful permanent resident and departs the United States;

(4) obtains in a removal proceeding a grant of adjustment of status as relief from removal; or

(5) dies.

Aff. at 7; see also 8 U.S.C. §§ 1183a(a)(2)−(3). If the sponsor dies, his estate will not be responsible for the immigrant. Id. The form specifically states, "Note that divorce does not terminate your obligations under this Form I-864." Id. (emphasis added).

The Court will first address the discovery requests included in Yashar's opposition.

5

Yashar Opp'n at 2–9. The Court will then address the Ninth Circuit's discussion about Yashar's obligation to Ayla and the Affidavit's underlying policies. Finally, the Court will address the four sources of Ayla's income that Yashar asserts offsets his obligation: (1) the divorce judgment against Ayla; (2) the rent that Ayla's adult son pays for her to live with him; (3) the food stamps that the State of California provides to Ayla; and (4) Ayla's Turkish pension. Yashar Mot. at 2–3.

### A. Further Discovery is Unnecessary

In his opposition to Ayla's motion for summary judgment, Yashar claims that Ayla has failed to comply with his requests for discovery. See Yashar Opp'n at 2–9. Yashar never mentioned any discovery disputes in his original motion for summary judgment and did not include in his declaration any descriptions of efforts to meet and confer. See Yashar Mot.; Yashar Decl; Yashar Opp'n.

Under Federal Rule of Civil Procedure 56(d), Yashar must make clear "what information is sought and how it would preclude summary judgment." Margolis v. Ryan, 140 F.3d 850, 853 (1998). Yashar failed to provide an affidavit supplementing his opposition explaining why he "cannot present facts to justify [his] opposition" without particular records. See Fed. R. Civ. P. 56(d). Because Yashar lacks support for his claim that Ayla has not complied with discovery, no further discovery is necessary.

In addition to Ayla's financial records, Yashar continues to request Ayla's son's financial records, despite the Ninth Circuit's holding that the son's financial support is irrelevant. See Yashar Opp'n at 6; see Erler, 824 F.3d at 1180. Accordingly, the Court will not order further discovery.

### B. Obligations Under the Affidavit

The Ninth Circuit affirmed the Court's ruling that Yashar has a continuing obligation to support Ayla, irrespective of their divorce. Erler, 824 F.3d at 1176. Upon signing the Affidavit, Yashar entered into a contract with the "United States Government for the benefit of the sponsored immigrant, and of any Federal, State, or local governmental agency or private entity that administers any 'means-tested public benefits

6

program.'" Id. at 1175; 8 C.F.R. § 213a.2(d); see also 8 U.S.C. § 1183a(a)(1).

The Ninth Circuit held that Yashar must sustain Ayla at 125% of the Federal Poverty Guidelines of a one-person household and that Ayla's son's financial support does not mitigate Yashar's responsibility. See Erler, 824 F.3d at 1178–80. The Ninth Circuit rejected the Court's calculation based on a two-person household, reasoning that, by the law of contracts, Yashar only reasonably expected to support one person, Ayla, at the time that he signed the Affidavit. Id. at 1178 (citing 11 Williston on Contracts § 31:11 (4th ed. 2012)). Because Ayla's adult son was not included in the Affidavit as a sponsored immigrant, his income and gifts to Ayla are irrelevant to calculating her income. Erler, 824 F.3d at 1178–80. The Ninth Circuit explained that if it were to consider Ayla's son's income, then Yashar would be obligated to support a person not included in the Affidavit during any year when Ayla and her son earn a combined income below 125% of the Federal Poverty Guidelines for a two-person household. Id.

The Ninth Circuit discussed three general guidelines in interpreting the policies embedded in 8 U.S.C. § 1183a. See id. First, the Ninth Circuit emphasized that the sponsor should only be obligated to finance what he reasonably expected when signing the Affidavit. Id. at 1178. Second, the purpose of the Affidavit is not only to protect the immigrant from poverty but to "prevent the admission to the Unites States of any alien who 'is likely at any time to become a public charge.'" Id. at 1179 (citing Liu v. Mund, 686 F.3d 418, 422 (7th Cir. 2012) (quoting 8 U.S.C. § 1182(a)(4)(A))). Third, if a court's decision must provide one side a windfall, the court should favor the immigrant over the sponsor. Erler, 824 F.3d at 1179 ("Because the sponsor is not an intended beneficiary of the affidavit-of-support requirement . . . we see no reason why the sponsor, rather than the immigrant should receive the windfall."); see also Liu, 686 F.3d at 422.

8 U.S.C. § 1183a does not define income as it applies to a sponsored immigrant or discuss particular categories of income. The statute only has one portion that discusses income and it is in the context of defining the sponsor:

7

> For purposes of this section, a reference to an annual income equal to at least a particular percentage of the Federal poverty line means an annual income equal to at least such percentage of the Federal poverty line for a family unit of size equal to the number of members of the sponsor's household (including family and non-family dependents) plus the total number of other dependents and aliens sponsored by the sponsor.

8 U.S.C. § 1183a(f)(6)(iii); see also id. § 1183a(f) ("'sponsor' defined"); id. § 1183a(f)(1)(E) (defining sponsor in part as one who "demonstrates (as provided in paragraph (6)) the means to maintain an annual income equal to at least 125 percent of the Federal poverty line"). The statute does not make any reference to the tax code when describing the sponsored immigrant's income; the tax code is only relevant to the sponsor's eligibility to sign the Affidavit. See also 8 C.F.R. § 213a.1(2) ("Income means an individual's total income (adjusted gross income for those who file IRS Form 1040EZ) for the purposes of the individual's U.S. Federal tax liability . . . [and o]nly an individual's Federal tax return . . . shall be filed with an affidavit of support . . . ."). Immigrants who have not yet gained admission would not have filed U.S. tax income forms, so it is not logical to assume that this section applies to them. As a result of the lack of a definition of income for the immigrant in 8 U.S.C. § 1183a and 8 C.F.R. § 213a.1(2), courts that have been tasked with determining a sponsored immigrant's income under 8 U.S.C. § 1183a cite few sources in their reasoning. See, e.g., Shumye v. Felleke, 555 F. Supp. 2d 1020, 1024–27 (N.D. Cal. 2008).

When assessing income, the Court analyzes Ayla's income on an annual basis from the date of separation on March 25, 2011 to the end of 2016. See id. at 1024 (calculating the plaintiff-immigrant's income annually); Stump v. Stump, No., 1:04-CV-253-TS, 2005 WL 1290658, at *11 (N.D. Ind. May 27, 2005); 8 U.S.C. § 1183a(1)(A).

### C.  Qualifying Income

Yashar points to four alleged sources of income that could offset his obligations under the Affidavit: (1) the $10,242 divorce judgment against Ayla in 2012; (2) the rent money Ayla does not pay to live with her adult son; (3) food stamps Ayla receives from the State of California; and (4) Ayla's Turkish pension. Yashar Mot. at 2–3. The Court

8

will address each alleged source of income in turn.

### 1. **The Divorce Settlement**

Yashar argues that the $10,242 divorce judgment that he claims he never collected from Ayla constitutes income for Ayla in 2012. Yashar Mot. at 2–3. While Yashar provided a document evidencing a $10,242 judgment against Ayla, he failed to provide any evidence that he has not collected the money. Erler Divorce Judgment (dkt. 70-5); see Yashar Decl. Yashar has therefore failed to carry his burden as to this purported income.

Moreover, the $10,242 judgment order for Ayla to pay Yashar relates to the division of the couple's assets. Divorce Judgment at 4–5. Even if Yashar had provided evidence that he did not collect the $10,242 judgment, it is not relevant to these proceedings, and, thus, does not qualify as income. See Shumye, 555 F. Supp. 2d at 1025 (ruling that a $49,000 divorce settlement did not constitute income earned by plaintiff because the settlement arose from the former couple's state community property rights). If Yashar desires to collect his $10,242 judgment against Ayla, he can take this matter up with San Mateo Family Court.

### 2. **Rent**

Yashar next argues that Ayla earns $983.50 per month, because Ayla has agreed to complete domestic work for her son in exchange for his paying the rent. Yashar Mot. at 2, 10−12. Yashar primarily relies upon Toure-Davis v. Davis to argue that a district court has previously classified domestic work performed in exchange for free rent as income. See Yashar Mot. at 11 (citing No. WGC-13-916, 2015 WL 993575, at *7 (D. Md. Mar. 4, 2015)) (holding that because government housing subsidies count as income under 8 U.S.C. § 1183a, a private housing subsidy in exchange for domestic work qualifies as income when there is an agreement that quantifies the value of the work).

Ayla's housing situation is distinguishable from the contract in Toure-Davis. There is no evidence that any contract exists between Ayla and her son that appraises her domestic work. See Solmaz Decl. (dkt. 73-1) ¶ 3–5. In fact, Ayla's son signed an

affidavit declaring that he allows his mother live with him for free as a gift. Id.[2] Further, in Toure-Davis, the plaintiff moved in with a man with whom she did not share a biological or marital relationship, and they agreed that she would pay rent of $600 a month. 2015 WL 993575, at *5–6. The plaintiff subsequently agreed to perform cooking and cleaning work in lieu of paying $600 a month. Id. Unlike Toure-Davis, Ayla's ability to live with her son is not contingent upon any performance of work. See Solmaz Decl. ¶¶ 3–5.

Ayla never contracted with her son to provide domestic housework in exchange for rent coverage. Id. The rent she is allegedly responsible for covering is not income under 8 U.S.C. § 1183a.

### 3. Food Stamps

Yashar further asserts that the food stamps Ayla receives from the State of California qualify as income under 8 U.S.C. § 1183a. Yashar Mot. at 2–3, 10–12.

Ayla argues that the food stamps are not income, because the Internal Revenue Service ("IRS") does not classify food stamps as taxable income. Ayla Opp'n. at 3–4. Ayla also relies on language that discusses a sponsor's income in 8 C.F.R. § 213a.1 to argue that only reportable income on the IRS Form 1040EZ qualifies as income under 8 U.S.C. § 1183a for the sponsored immigrant. Id. She further argues that allowing food stamps to qualify as income is contrary to public policy as it allows the sponsor to circumvent his responsibilities and makes the sponsored immigrant a burden on the state. Ayla Mot. at 8 (citing Skorychenko v. Tompkins, No. 08-CV-626-BBC, 2009 WL 3837340, at *2 (W.D. Wis. Nov. 3, 2009)); Ayla Opp'n at 4 (citing Carlborg v. Tompkins, No. 10-cv-187-BBC, 2010 WL 4553558, at *4 (W.D. Wis. Nov. 3, 2010)); Stump v.

---

[2] Yashar assumes that Ayla is responsible for half of the rent because she lives in a two-adult household. While Yashar never explains why he believes that Ayla is responsible for 50% of the rent, he seems to assume that, by default, two adults living under one roof would each be responsible for half of the rent. See Yashar Mot. But it is common knowledge that roommates often do not equally split rent and often split rent based on idiosyncratic household needs. In fact, nothing in Toure-Davis suggests that $600 amounted to 50% of the rent. See No. WGC-13-916, 2015 WL 993575.

10

Stump, No. 04-CV-253-TS, 2005 WL 1290658, at *9 (N.D. Ind. May 27, 2005) ("Given the choice between taxpayers and a sponsor, Congress prefers, indeed requires, that a sponsor support an alien who has not become self-reliant.").

Ayla's reliance on the IRS's definition of income overlooks the reason why the IRS does not categorize government subsidies as taxable income. The IRS serves as the federal government's tax assessor and collector; it does not perform immigration regulatory duties. For the purposes of assessing and collecting taxes, it makes little sense for the government to award a public benefit to an individual and then tax the individual on it. For the purposes of assessing an immigrant's financial need, however, it does make sense to count food stamps as income. Food stamps contribute to keeping an individual above 125% of the Federal Poverty Guidelines, and the Affidavit's stated goal is to keep people from being public charges. Aff. at 6. Moreover, the statute seems to recognize this by providing that the State of California can recover the cost of food stamps from the sponsor. Id. at 7; see also 8 U.S.C. § 1183a(a)(1)(B) ("[the Affidavit] is legally enforceable against the sponsor by . . . any State (or any political subdivision of such State) . . . ."); see also 8 U.S.C. § 1183a(b)(1)(A) ("Upon notification that a sponsored alien has received any means-tested public benefit . . . a State[]or any political subdivision of a State shall request reimbursement by the sponsor in an amount which is equal to the unreimbursed costs of such benefit.").

Ayla's interpretation of the Affidavit obligations would create policy contrary to the statutory purpose: it incentivizes immigrants to apply for governmental subsidies. See Erler, 824 F.3d at 1179. "The requirement under § 1183a that a sponsor promise to maintain the immigrant is intended not only to protect the immigrant from poverty, but to protect the government from a public burden." Carlborg, 2010 WL 4553558, at *4. If the Court were to hold that the food stamps do not qualify as income, then Ayla would receive $2,400 annually from the State of California and be able to collect the same $2,400 from Yashar. Thus, Ayla could receive a double payment and would be incentivized to apply for government assistance as it allows her to extract a windfall above 125% of the Federal

11

Poverty Guidelines. Contrary to what Ayla implies, Yashar cannot avoid financial liability when an agency provides means-tested public benefits to Ayla—because the Affidavit binds Yashar to Ayla, any government agency, and any third-party providing means-tested public benefits. See Ayla Opp'n at 3–4; see 8 U.S.C. § 1183a(a)(1)(B).[3]

Ayla relies on an opinion from the District Court for the Western District of Wisconsin, in which the court stated in dicta that it was unconvinced that government subsidies are income under 8 U.S.C. § 1183a, because counting them as income is contrary to their purpose and to the policy outlined in the statute. Ayla Mot. 8 (citing Skorychenko, 2009 WL 3837340, at *2 ("It would be contrary to defendant's contractual obligations under the I-864 affidavit to allow him to escape his obligation by subtracting the benefits plaintiff has received from federal, state, or local public assistance services.")). Absent from that court's decision is any recognition that the sponsor does not actually get off scot-free when a plaintiff receives means-benefit assistance; he is still bound to any governmental agency or third party that provided means-benefit assistance to the sponsored immigrant. See Skorychenko, No. 08-CV-626-BBC, 2009 WL 3837340.[4]

Ayla also cites a quotation from Stump out of context in order to bolster her policy argument. Ayla Opp'n at 4 (citing 2005 WL 1290658, at *9 ("Given the choice between taxpayers and a sponsor, Congress prefers, indeed requires, that a sponsor support an alien who has not become self-reliant.")). In Stump, the sponsor-defendant argued that in order for the plaintiff to claim damages, she must first show that she was receiving means-tested public benefits in order to prove that she was below 125% of the Federal Poverty

---

[3] The Ninth Circuit reasoned that if the only outcomes available result in a windfall for either party, courts should favor the sponsored immigrant. Erler, 824 F.3d at 1179. This paradigm does not apply to food stamps. Only Ayla could earn a windfall since Yashar is ultimately liable for 125% of the Federal Poverty Guidelines; he would simply reimburse the state for the value of the food stamps instead of directly paying Ayla the value of the food stamps.

[4] This is not to say that, going forward, Ayla should continue to seek food stamps and then the State of California pursue reimbursement from Yashar—if Yashar is paying the full amount owed to Ayla, presumably she should not need food stamps.

12

Guidelines. Stump, 2005 WL 1290658, at *4–5. The court in Stump correctly held that the plaintiff does not need to receive means-benefits assistance to enforce the sponsor's obligations. See id. The court made the aforementioned statement to explain why a sponsored immigrant should not have to first receive means-tested public benefits in order to sue the sponsor. See id. at *9.

The food stamps that Ayla has already received from the State of California qualify as income for the purposes of determining Yashar's financial liability to Ayla. Indeed, courts have held that government subsidies are income under 8 U.S.C. § 1183a. See Shumye, 555 F. Supp. 2d at 1025; see also Toure-Davis, No. WGC-13-916, 2015 WL 993575, at *5–6 (recognizing that government housing subsidies are income and extending income under 8 U.S.C. § 1183a to include private housing subsidy agreements); Cheshire v. Cheshire, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *6 n. 12 (M.D. Fla. May 4, 2006) (suggesting that food stamps would have been included in the plaintiff's income if there had been enough evidence to show that plaintiff received them). However, as outlined in the Affidavit, California has the right to sue Yashar for reimbursement and legal fees. See 8 U.S.C. § 1183a(a)(1)(B).

### 4. Pension from the Turkish Government

Finally, Yashar claims that Ayla's Turkish pension is income under 8 U.S.C. § 1183a. Yashar Mot. at 2–3, 10–12. Ayla argues that the U.S.-Turkey Tax Treaty prohibits the United States from taxing her for her Turkish pension and, therefore, it is not income under 8 U.S.C. § 1183a. Ayla Mot. at 8–9 (citing 1996, U.S.-Turkey, Art. 19.2 TAX TREATIES (CCH) ¶ 10,103.19). As in her argument against counting food stamps as income, Ayla relies on 8 C.F.R. § 213a.1 to claim that 8 U.S.C. § 1183a uses the IRS's definition of income. Ayla also cites to out-of-circuit authority suggesting that courts do not consider foreign assets as income that offsets a sponsor's obligation. See Ayla Mot. at 9 (citing Ainsworth v. Ainsworth, No. Civ. A. 02-1137-A, 2004 WL 5219037, at *3 (M.D. La. May 27, 2004)).

Ayla's reliance on Ainsworth is misplaced. In dicta, the court in Ainsworth

13

suggested that if it were to determine what qualifies as income under 8 U.S.C. § 1183a, it would not include foreign assets.[5] Id. (the defendant had asserted that the "plaintiff may own some assets in Honduras"). Unlike Ainsworth, where the court knew little about the plaintiff's assets, there is indisputable evidence that Ayla has earned a pension that continues to accrue money and that can be quantified on an annual basis. See Yashar Decl. Ex. I. Further, unlike some assets, such as real property, Ayla's daughter presumably can immediately withdraw funds from a bank account and transfer the funds to Ayla. See Ayla 2017 Decl. ¶ 4. Although Ayla declares that she "can't access the funds from the United States [and does] not receive any of the pension funds for use in the United States[,]" she never asserts that she is unable to have her daughter or another agent transfer the funds to her. See id. In fact, Ayla conceded that her adult "daughter in Turkey accesses the pension funds and uses them to pay for her own living expenses in Turkey." Ayla 2013 Decl. ¶ 17.

Ayla next relies on 8 C.F.R. § 213a.1(2) to construe "income" narrowly as reported taxable income only in order to argue for the exclusion of her Turkish pension. See Ayla Mot. at 8–9. Again, her reliance is misplaced. While the regulation defines "income" as "adjusted gross income for those who file IRS Form 1040EZ[,]" this section specifically applies to the sponsor, not the immigrant. See 8 C.F.R. § 213a.1(2). Further, tax policy involves an entirely different set of considerations than the Affidavit, which is concerned with preventing sponsored immigrants from becoming public charges.

Discounting Ayla's pension fund as income when her daughter freely uses the funds would contradict the logic set forth by the Ninth Circuit and would "lead[] to an untenable result." See Erler, 824 F.3d at 1178. The Ninth Circuit ruled that Yashar's obligations to Ayla should be measured by a one-person household standard, because he did not manifest

---

[5] The court in Ainsworth appeared hesitant to classify the plaintiff's assets in Honduras as income in part due to the lack of evidence of such assets. See 2004 WL 5219037, at *3. The court could not engage in a full analysis of the assets and did not specify the type of assets or when the assets were acquired. It is also unclear if the court wanted to exclude foreign assets categorically or excluded them because the assets were acquired outside the relevant time period.

14

assent to support Ayla and her adult son. Id. The pension is Ayla's. Ayla has not claimed that there is no way for her to access the pension, which is distinguishable from "contend[ing] that she cannot access the funds within the United States." See id. at 1180. While she might have to arrange a transfer with her daughter, she has chosen to allow her daughter to use her pension funds. See Ayla 2013 Decl. ¶ 17. If Ayla could use the money to support herself but instead chooses to let her daughter use it, her choice should not negatively impact Yashar. Not counting the pension fund as income under 8 U.S.C. § 1183a forces Yashar to pay more. While Yashar will pay no more than 125% of the Federal Poverty Guidelines, discounting Ayla's Turkish pension allows her to either live above 125% of the Federal Poverty Guidelines at Yashar's expense or subsidize her adult daughter in Turkey at Yashar's expense—neither of which he committed to when he signed the Affidavit.

Lastly, Ayla argues that even if her pension is income under 8 U.S.C. § 1183a, the pension does not raise her income to 125% of the Federal Poverty Guidelines, and thus, Yashar is still liable. See Ayla Mot. at 9–10. Yashar is still bound to support Ayla at 125% of the Federal Poverty Guidelines; it is not an all-or-none obligation as framed in Ayla's motion. See id. Because the pension fund is income, it reduces Yashar's financial obligation accordingly.

Ayla's pension from her work in the Turkish Government is income under 8 U.S.C. § 1183a and mitigates Yashar's annual obligation accordingly. Considering that the Turkish pension is currently quantified in Turkish Lira, the exchange rate between U.S. Dollars and Turkish Lira fluctuates, and banks commonly charge customers for exchange fees, the value of Ayla's pension funds should reflect these realities when calculating Yashar's obligation.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Yashar's motion for summary judgment because Ayla did not earn sufficient income to discharge Yashar of his financial responsibility. The Court GRANTS IN PART and DENIES IN PART Ayla's motion for

15

summary judgment because Yashar owes Ayla some—but not all—of the money she seeks. Because some of the financial statements provided by both parties are approximations, the parties are ordered to appear before Magistrate Judge Cousins in order to determine the exact amount due to Ayla according to the Court's instructions.[6] To determine Yashar's obligation for each year from 2011 to 2016, Magistrate Judge Cousins shall subtract Ayla's food stamps and annual Turkish pension from 125% of the Federal Poverty Guidelines for a one-person household. Magistrate Judge Cousins shall also credit Yashar for his $3,500 payment to Ayla in 2011. See Ayla 2013 Decl. ¶ 12. Yashar has a continuing obligation to support Ayla until one of the five conditions listed in the Affidavit comes to fruition. He is also liable to the State of California for its past food stamp payments to Ayla.

**IT IS SO ORDERED.**

Dated: November 15, 2017

CHARLES R. BREYER
United States District Judge

---

[6] Magistrate Judge Cousins should also look at the issue of attorneys' fees.